**HERTZ et al. v. KNUDSON, Deputy and Acting Secretary of Trade and Commerce of Nebraska.**

(Circuit Court of Appeals, Eighth Circuit. May 30, 1925.)

No. 6811.

**1. Receivers ⪪⟹200—Court cannot pay receiver from property seized without jurisdiction.**

A court is without power to pay its receivers out of property which it seized without jurisdiction, but they may be entitled to such payment under an agreement with an adverse claimant that they shall act pending the suit and be paid a reasonable compensation from the property.

**2. Courts ⪪⟹305—State is not a "citizen" for jurisdictional purposes.**

A federal District Court is without jurisdiction, on the ground of diverse citizenship, of a suit between a state and citizens of another state.

**3. Courts ⪪⟹305—Suit by a department of a state held one by the state, not within the jurisdiction of a federal court.**

Under Comp. St. Neb. 1922, § 7748, providing that when a domestic corporation is insolvent, or found to be in such condition that its further transaction of business will be hazardous to its policy holders, creditors, or stockholders, or to the public, a court may order its liquidation under direction of the department of trade and commerce of the state, which shall be vested with title to all the property and rights of the company, such department represents the state, which has made itself the active liquidator, and a suit by the department, or by an officer thereof in its behalf, against citizens of another state, is a suit by the state, of which a federal court is without jurisdiction.

**4. Courts ⪪⟹305—Whether state is actual party to be determined from the whole record.**

Whether a state is the actual party plaintiff or defendant in a suit is to be determined by the nature of the case as presented by the whole record.

Faris, District Judge, dissenting.

Appeal from the District Court of the United States for the District of Minnesota; John F. McGee, Judge.

Suit by K. C. Knudson, Deputy and Acting Secretary of Trade and Commerce of the State of Nebraska, against A. J. Hertz and another. Decree for complainant, and defendants appeal. Reversed and remanded, with direction to dismiss.

Hubert Harvey, of St. Paul, Minn. (Myron L. Learned, of Omaha, Neb., on the brief), for appellants.

Before LEWIS, Circuit Judge, and VAN VALKENBURGH and FARIS, District Judges.

VAN VALKENBURGH, District Judge. The Lion Bonding & Surety Company is a corporation organized and existing under and by virtue of the laws of the state of Nebraska. For some years prior to 1921 it had been conducting a business of insurance in the state of Nebraska, and was doing business and had property also in eighteen other states, including the state of Minnesota. The Nebraska Laws of 1919, c. 190 (Comp. Stat. 1922, §§ 7742–7748), contained the following provisions:

"Sec. 4. *Delinquent Companies—Proceedings—Liquidation.*

"(1) Whenever any domestic company is insolvent, or has refused to submit its books, papers, accounts, or affairs to the reasonable inspection and examination of the department of trade and commerce, or has neglected or refused to observe an order of the department of trade and commerce, to make good within the time prescribed by law, any deficiency, whenever the capital of a stock company, or the reserve of a mutual company, shall have become impaired, or it has by contract of reinsurance, or otherwise, transferred or attempted to transfer substantially its entire property or business, or entered into any transaction the effect of which is to merge substantially its entire property or business in the property or business of any other company without first having obtained the written approval of the department of trade and commerce, or is found, after an examination, to be in such condition that its further transaction of business would be hazardous to its policy holders, or to its creditors, or to its stockholders, or to the public; or has willfully violated its articles of incorporation or association or any law of this state, or whenever any trustee, director, manager or officer thereof has refused to be examined under oath touching its affairs, the

department of trade and commerce may apply to the district court, or any judge thereof, in the county or judicial district in which the principal office of such company is located, for an order directing such company to show cause why the department of trade and commerce should not take possession of its property, records and effects and conduct or close its business, and for such other relief as the nature of the case and the interest of its policy holders, creditors, stockholders or the public may require.

"(2) On such application, or at any time thereafter, such court or judge may, in his discretion, issue an order restraining such company from the transaction of its business, or disposition of its property, records and effects until the further order of the court. On the return of such order to show cause, and after a full hearing, the court shall either deny the application or direct the department of trade and commerce forthwith to take possession of the property, records and effects, and conduct the business of such company * * * until on the application of the department of trade and commerce, or of such company, it shall, after a like hearing, appear to the court that the cause of·such order directing the department of trade and commerce to take possession has been removed, and that .the company can properly resume possession of its property, records and effects, and the conduct of the business.

"(3) If, on a like application and order to show cause, and after a full hearing, the court shall order the liquidation of the business of such company, such liquidation shall be made by and under the direction of the department of trade and commerce, which may deal with the property, records, effects and business of such company in the name of the department of trade and commerce or in the name of the company, as the court may direct and it shall be vested by operation of law with title to all the property, effects, contracts and rights of action of such company as of the date of the order so directing it to liquidate. The filing or recording of such order in the office of the register of deeds in any county where property is located in the state shall impart the same notice that a deed, bill of sale, or other evi-· dence of title, duly filed or recorded by such company would have imparted."

Pursuant to the provisions of the statutes aforesaid, the department of trade and commerce of the state of Nebraska applied to the district court of Douglas county, Neb., for an order directing it to take possession of

the property and to conduct the business of the Lion Bonding & Surety Company, upon the ground that said company was found to be in such condition that its further transaction of business would be hazardous to its policy holders, its creditors, its stockholders, and the public, and ·alleging other violations of law committed by defendant company. On April 12, 1921, the district court of Douglas county made an order directing the department of trade and commerce to take possession forthwith of the property, records, and effects and to conduct the business of the defendant company, as in said statutes provided. Later, on May 28, 1921, the same court, upon supplemental petition, made an order that the business of the Lion Bonding & Surety Company be liquidated under the direction of the department of trade and commerce, and that department was directed to deal with .the property, records, effects, and business of the defendant as in such cases provided.

On May 2, 1921, while the decree of the Nebraska court was in full force, and the department of trade and·commerce was in actual possession thereunder of the property of the defendant, Lion Bonding & Surety Company, in that state, one Karatz, a citizen of Minnesota, filed· a bill in equity against the Lion Bonding & Surety Company in the District Court of the United States for the District of Minnesota, and by that court appellants herein were appointed receivers to collect all assets, wherever situated, and to realize upon and distribute the same. These receivers duly qualified and entered upon their duties. Thereafter intermediate suits were filed to determine the respective rights of the Minnesota receivers and the department of trade and commerce of the state of Nebraska to administer this estate. On the 23d day of April, 1923, the Supreme Court of the United States (262 U. S. 77, 43 S. Ct. 480, 67 L. Ed. 871) held upon appeal that the federal court of Minnesota had no jurisdiction over the Karatz suit, for the reasons, among others, that the amount claimed in the complaint was less than the sum of $3,000, and that there was want of equity in that the suit was brought by an unsecured simple contract creditor. It followed that the appointment of appellants as receivers was without authority.

Thereafter this suit in equity was filed in the District Court of the United States for the District of Minnesota, in which the department of trade and commerce for the state of Nebraska was named as plaintiff, and appellants A. J. Hertz and John L. Le-

vin, receivers as aforesaid, were named as defendants. The complaint contained the following allegation: "That the grounds upon which this court's jurisdiction depends are the fact that the plaintiff is the state of Nebraska, and the defendants are citizens of another state, and that the amount involved in the suit is in excess of the sum of three thousand dollars· ($3,000)."

It was alleged upon information and belief that the defendants had reduced to their possession assets amounting in cash to approximately $3,000, and had in their possession and in their names, as receivers, real estate of the value of $14,000 formerly belonging to the Lion Bonding & Surety Company, and now the property of the plaintiff. The bill prayed an accounting and for recovery accordingly. To this bill the defendants filed a joint answer, and the defendant Levin also filed a separate answer. In these answers it was alleged that the receivers had acted in good faith and had rendered valuable services and incurred large expense in collecting and preserving the property and effects of the Lion Bonding & Surety Company. It was also alleged in the answers that, while the litigation was pending and the issues undetermined, a number of conferences were held between one Amos Thomas, alleged to be the duly qualified and acting agent of the department of trade and commerce of the state of Nebraska, and defendants and their counsel, at which it was agreed, for the sake of economy and for the benefit of the estate, that, pending the determination by the courts of the issues then before them, defendants should act as receivers in the state of Minnesota, all districts in the Eighth Circuit in which they had attempted to qualify by filing a certificate under section 56 of the Judicial Code, and in all other federal districts where they had applied for and obtained appointment as receivers in ancillary proceedings except in the District of Nebraska, and that the department of trade and commerce should act as receiver in the state of Nebraska, where the home office of the company was located; that, in the event of the ultimate establishment of the department as liquidator of said estate, the defendants should be reimbursed for their necessary disbursements and expenditures, and should be paid the reasonable value of their services; and, on the other hand, in the event of the ultimate establishment of defendants as receivers, that said estate should recognize and accept the work of the department as receiver in the territory aforesaid, and should pay its necessary disbursements and expenditures and the reasonable value of its services. It was further alleged that the plaintiff and defendants then and there agreed that such expenditures and compensation for services should be deducted from assets marshaled in said respective territories. Thereafter, the following stipulation amending the bill of complaint was made:

"It is hereby stipulated by and between the parties hereto:

"I. That the title of said cause in the bill, on the records and elsewhere herein be amended as to the designation of the plaintiff so as to read as follows: K. C. Knudson, Deputy and Acting Secretary of Trade & Commerce for the Department of Trade and Commerce of the State of Nebraska.

"II. That the bill of the plaintiff herein may be considered to have been amended as of the date of the filing thereof by the addition thereto of the following, to wit: That during all the times herein mentioned, plaintiff, K. C. Knudson, was and still is the deputy and acting secretary of Trade & Commerce for the department of trade and commerce of the state of Nebraska, with full authority to execute the powers and discharge the duties vested by law in the said department, and was and is a citizen and resident of the state of Nebraska."

Immediately after the filing of this stipulation, appellee herein moved to strike all portions of the answers of the defendants except that part admitting certain allegations of the bill. The stricken portion included the alleged agreement pendente lite above stated. This motion was sustained, and the court entered a decree in favor of complainant in the sum of $14,896.10, with interest. The decree also directed the conveyance, by defendants to complainant, of certain real estate therein described. Upon motion to vacate this decree, and upon hearing, a modifying order was later entered whereby the money judgment was reduced to $2,943.99, with interest from January 31, 1924, at 6 per cent. per annum. It is from this decree, as modified, that this appeal is prosecuted.

The substance of appellants' complaint, as disclosed by their assignments of error, is as follows: First, that this suit cannot be maintained because the plaintiff is the state of Nebraska. Second, that no jurisdictional amount was involved, because the facts disclosed that plaintiff's maximum recovery could not exceed $2,343. Third, that if the suit be maintained defendants are entitled to compensation for expenditures made and services rendered in the course of their re-

ceivership which benefited the estate. Because of the unusual circumstances involved, these specifications will be considered in the inverse order.

[1] Ordinarily speaking, the court below, being without jurisdiction, had no property with which to pay any one, and in such case the defendants were not entitled to compensation out of property seized without jurisdiction. Hawes et al. v. First Nat. Bank of Madison et al., 229 F. 51, 59, 143 C. C. A. 645; Brictson Mfg. Co. v. Woodrough (C. C. A. 8) 284 F. 484; Finneran v. Burton (C. C. A. 8) 291 F. 37, 34 A. L. R. 1351. But in this case the defendants, by their answer, set up an agreement with the department of trade and commerce through one Amos Thomas, alleged to be the duly qualified and acting agent of that department, whereby it was agreed, in the interest of economy in administration and to meet the necessities of the situation while the litigation was pending, services should be performed and expenses incurred by the defendants for which they should be paid and reimbursed in event of a final decision adverse to them. In the record we find the following certificate of a record of the district court of Douglas county, Neb., which had jurisdiction over the department of trade and commerce in the matter of its liquidation of this estate:

"I, Robert Smith, clerk of the district court, Fourth judicial district of the state of Nebraska, within and for said county, do hereby certify that the appointment of Amos Thomas, as special agent of the department of trade and commerce of the state of Nebraska in charge of and as liquidator of the Lion Bonding & Surety Company, was approved by said court on the 16th day of May, 1921, that he is the duly appointed, qualified, and acting special agent in charge of the Lion Bonding & Surety Co., for the purpose of liquidation, and that said appointment and order of approval has not been vacated, modified, or set aside, and is now in full force and effect as the same appears fully upon the records and files of said court, now in my charge remaining as clerk aforesaid."

From this it would appear that Thomas had authority to make this alleged agreement. If the allegations of the answer in this particular are sustained by the proofs, then it would appear that the estate in the hands of the department of trade and commerce should be charged with whatever may be found to be justly and reasonably due for services performed and moneys expended by defendants under this agreement. By virtue thereof they were acting as and for the department of trade and commerce, and were doing what that department otherwise would have been compelled to do. For this reason, this tendered defense should not have been stricken from the answer, and a hearing should have been accorded upon the issue thus made, if the court below had jurisdiction to render any decree in the case.

The contention of appellants that the court below was without jurisdiction because the amount in controversy was below the jurisdictional amount cannot be sustained; that amount depends upon the statement of complainants' case, and is not conditioned by allegations in defense. The complaint in this particular was sufficient. A stipulation was filed showing an amount involved of approximately $14,000, besides real estate, the value of which was not stated. The case went to hearing in that situation, and a decree was rendered granting pecuniary relief in excess of $14,000. Subsequently, upon rehearing, the amount was reduced below $3,000; but on the record presented it cannot be said that the case fails because of the amount in controversy.

[2] We come now to the question of whether the court below was without jurisdiction because of the parties to the suit.

"A state is not a citizen. And, under the Judiciary Acts of the United States, it is well settled that a suit between a state and a citizen or a corporation of another state is not between citizens of different states; and that the Circuit Court of the United States has no jurisdiction of it, unless it arises under the Constitution, laws, or treaties of the United States. Ames v. Kansas, 111 U. S. 449 [4 S. Ct. 437, 28 L. Ed. 482]; Stone v. South Carolina, 117 U. S. 430 [6 S. Ct. 799, 29 L. Ed. 962]; Germania Ins. Co. v. Wisconsin, 119 U. S. 473 [7 S. Ct. 260, 30 L. Ed. 461]." Postal Telegraph Cable Co. v. Alabama, 155 U. S. 482, 487, 15 S. Ct. 192, 194, 39 L. Ed. 231.

Since the foregoing decision was rendered, the Circuit Court has been abolished, and by the Judicial Code the jurisdiction of the District Court has been specifically defined. Therein, that court is given no jurisdiction of controversies between a state and citizens of different states upon the ground of diversity of citizenship. In this case diversity of citizenship is the only ground assigned as conferring jurisdiction. Chicago, R. I. & P. R. Co. v. State of Nebraska (C. C. A. 8) 251 F. 279, 163 C. C. A. 435; Robertson v. Jordan River Lumber Co. (C. C. A. 5) 269 F. 606.

The Eleventh Amendment to the Constitution which provides that "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state," is not here involved. By this amendment a privilege is granted for the benefit of the state, which applies specifically to suits prosecuted against the state. It has been uniformly held under this amendment that a state cannot be made a defendant in a federal court against its consent, but that the privilege may be waived if the state sees fit voluntarily to submit itself to the jurisdiction. That principle, however, cannot operate to confer jurisdiction where none exists. The Supreme Court in Gunter v. Atlantic Coast Line, 200 U. S. 273, loc. cit. 292, 26 S. Ct. 252, 259, 50 L. Ed. 477, points out "the distinction which exists between the power of a court to deal with a subject over which it has jurisdiction and its want of authority to entertain a controversy as to which jurisdiction is not possessed."

[3] It remains to consider then whether the state of Nebraska is an actual party to this suit. If it is, the court below was without jurisdiction, and the proceeding must be dismissed for that reason. The principle involved is well established, but its application in a special case is not free from difficulty. In determining whether a state is the actual or real party in interest, the general statement is that the state is such real party when the relief sought is that which inures to it alone, and in its favor the judgment or decree, if for the plaintiff, will effectively operate. Missouri, etc., Ry. Co. v. Missouri Rd., etc., Commissioners, 183 U. S. 53, 58, 22 S. Ct. 18, 46 L. Ed. 78.

The Supreme Court, in Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362, 389, 14 S. Ct. 1047, 1051, 38 L. Ed. 1014, has drawn a line of distinction between a class of cases which hold that a state is the real party in interest and another class in which the contrary is held. It is there said: "Two classes of cases have appeared in the decisions of this court, and it is in determining to which class a particular case belongs that differing views have been presented. The first class is where the suit is brought against the officers of the state, as representing the state's action and liability, and thus making it, though not a party to the record, the real party against which the judgment will so operate as to compel it to specifically perform its contracts. * * * The other class

is where a suit is brought against defendants who, claiming to act as officers of the state, and under the color of an unconstitutional statute, commit acts of wrong and injury to the rights and property of the plaintiff acquired under a contract with the state. Such suit, whether brought to recover money or property in the hands of such defendants, unlawfully taken by them in behalf of the state, or for compensation in damages, or, in a proper case where the remedy at law is inadequate, for an injunction to prevent such wrong and injury, or for a mandamus, in a like case, to enforce upon the defendant the performance of a plain legal duty, purely ministerial—is not, within the meaning of the Eleventh Amendment, an action against the state."

In other cases, owing to the peculiar issues involved, in ruling that the state was not the real party in interest, apparent emphasis has been placed upon the fact that the action did not seek to recover any money for a state. Within this class of cases falls Missouri, etc., Railway Co. v. Missouri Rd., etc., Commissioners, 183 U. S. 53, 22 S. Ct. 18, 46 L. Ed. 78.

The case of Relfe v. Rundle, 103 U. S. 222, 26 L. Ed. 337, presents still a different situation. A statute of Missouri provided that: "Upon the rendition of a final judgment dissolving a company, or declaring it insolvent, all the assets of such company shall vest in fee-simple and absolutely in the superintendent of the insurance department of this state, and his successor or successors in office, who shall hold and dispose of the same for the use and benefit of the creditors and policy holders of such company and such other persons as may be interested in such assets." Rev. St. 1879, § 6043.

A life insurance company of the state of Missouri was dissolved by a decree of the Missouri court, and its property vested in Relfe, superintendent of the insurance department, as provided by statute. He was thereupon, on his own motion, made a party to a suit affecting the property of the insurance company pending in Louisiana. The standing of Relfe as a party to the suit was attacked principally "because Relfe had no standing in court; he being a creature of the state of Missouri, without capacity to sue or remove causes in Louisiana." The Supreme Court of the United States, holding that Relfe was a proper party, said: "Relfe is not an officer of the Missouri state court, but the person designated by law to take the property of any dissolved life insurance corporation of that state, and hold and dis-

pose of it in trust for the use and benefit of creditors, and other parties interested. The law which clothed him with this trust was, in legal effect, part of the charter of the corporation. He was the statutory successor of the corporation for the purpose of winding up its affairs. As such he represents the corporation at all times and places in all matters connected with his trust. He is the trustee of an express trust, with all the rights which properly belong to such a position. He is an officer of the state, and as such represents the state in its sovereignty while performing its public duties connected with the winding up of the affairs of one of its insolvent and dissolved corporations. His authority does not come from the decree of the court, but from the statute. He appeared in Louisiana not by virtue of any appointment from the court, but as the statutory successor of a corporation which the court had in a legitimate way dissolved and put out of existence. He was, in fact, the corporation itself for all the purposes of winding up its affairs."

While it is stated in the opinion that Relfe is an officer of the state, and as such represents the state in its sovereignty while performing its public duties connected with the winding up of the affairs of one of its insolvent and dissolved corporations, nevertheless it is to be noted that the status of Relfe was assailed upon the ground that he was an officer of the Missouri court, and as such without capacity to sue in a foreign jurisdiction. It is this issue which the Supreme Court obviously had in mind in its discussion. The case differs from the one before us in a very important particular. The Missouri law devolves the succession to the corporation upon an individual—selected, it is true, because of his official position, but nevertheless an individual as distinguished from a department of the state, as in the instant case. As the court says, Relfe was, in fact, the corporation itself for all the purposes of winding up its affairs. The statutes of Nebraska lodge this power and duty in a department of the state itself; while that department must act through individuals, no individual is given title to the assets of the defunct corporation, nor is substituted successor to the corporation for the purpose of liquidation.

In our judgment this distinction is a substantial one; but, be that as it may, we think the Supreme Court in later cases has inferentially distinguished the Relfe Case, and has departed from it if it is to be interpreted as holding that a state may be made a party

to a proceeding such as this through one of its officers or departments.

In Lankford v. Platte Iron Works, 235 U. S. 461, 35 S. Ct. 173, 59 L. Ed. 316, it was held that "a suit by a depositor in a bank in Oklahoma against members of the state banking board and the bank commissioner of Oklahoma to compel payments from, distribution of, and assessments for, the depositors' guaranty fund, is a suit against the state." It was further held that "the fact that the fund is to be used to satisfy claims of beneficiaries does not take its administration from the officers of the state or subject them to judicial control." This fund was created by leavying against the capital stock of every bank, organized and existing under the laws of the state, an annual assessment, during its continuance as a banking corporation, to be used for the purpose of liquidating deposits of failed banks and retiring warrants provided for in the act. In this respect it differs from the fund represented by the assets of the defunct Lion Bonding & Surety Company, but the manner in which the fund was created is not important. The controlling fact is that in each case there was a fund which was taken over by the state, through a department, for the same essential purpose of providing ultimate payment to all legitimate claimants. To effect this result, the state has made itself an active agent. It has taken over the title thereto, and has assumed all responsibilities concerning it. The suit of the appellee, if sustained, will add to this fund. The defense of appellants, if indulged, would deplete that fund. It is true that the rights of the parties are to be determined by a court of competent jurisdiction, but that court must be one to which the state may be properly admitted as a party. Neither the department of trade and commerce nor any of its officers has any interest in the controversy apart from that of the state. The department and the state are one and the same. The court adhered to the doctrine announced in Lankford v. Platte Iron Works in two other cases decided at the same term. American Water Softener Co. v. Lankford et al., composing the State Banking Board of the State of Oklahoma, 235 U. S. 496, 35 S. Ct. 184, 59 L. Ed. 329; Farish v. State Banking Board of the State of Oklahoma, 235 U. S. 498, 35 S. Ct. 185, 59 L. Ed. 330.

In Johnson v. Lankford, 245 U. S. 541, 38 S. Ct. 203, 62 L. Ed. 460, the Supreme Court reaffirmed the principle announced in Lankford v. Platte Iron Works. The case there before them differed in one of the distinc-

tive features to which reference has heretofore been made. Concerning this, the Supreme Court said: "The case is not like Lankford v. Platte Iron Works Co., 235 U. S. 461, 496 [35 S. Ct. 184, 59 L. Ed. 329]. There the effort was to compel the payment of a claim (certificates of deposit issued by a bank) out of the fund to which the state had a title and which it administered through its officers. Any demand upon it was a demand upon the state and a suit to enforce the demand was a suit against the state, necessarily precluded by the purpose of the law. The case at bar is not of such character. Its basis is Lankford's dereliction of duty, a duty enjoined by the laws of the state. * * * And hence Lankford is charged with personal liability. But no relief, as we have said, is prayed against the fund. If it were, Lankford v. Platte Iron Works Co., supra, might apply."

In Title Guaranty & Surety Co. of Scranton, Pa., v. State of Idaho for the Use of Allen, 240 U. S. 136, 36 S. Ct. 345, 60 L. Ed. 566, it is said: "Where the state, suing on behalf of depositors of a bank, is an actual party plaintiff, the case cannot be removed to the federal court."

[4] In the original petition, as we have seen, the plaintiff was stated to be the state of Nebraska, and the jurisdiction of the court below was invoked upon the ground of diversity of citizenship. The plaintiff named in the petition was the department of trade and commerce. Later Knudson, the deputy and acting secretary for the department of trade and commerce, was sought to be substituted by stipulation. No doubt both parties at that time intended this stipulation to cure the jurisdictional defect apparent on the face of the petition; but the consent of parties could not confer jurisdiction. Chicago, Burlington & Quincy Railway Co. v. Willard, 220 U. S. 413, 31 S. Ct. 460, 55 L. Ed. 521. And, although the case was tried without objection on this ground, nevertheless "this question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it." Mansfield, Coldwater & Lake Michigan Railway Co. et al. v. Swan et al., 111 U. S. 379, 382, 4 S. Ct. 510, 511, 28 L. Ed. 462. Whether a state is the actual party defendant in a suit is to be determined by consideration of the nature of the case as presented by the whole record, and not, in every case, by a reference to the nominal parties of the record. In re Ayers, 123 U. S. 443, 8 S. Ct. 164, 31 L. Ed. 216. Furthermore, the allegations of the petition respecting the parties in interest remain unchanged. The stipulation declares that Knudson has "full authority to execute the powers and discharge the duties vested by law in the said department." Of course, the department, as the state, must act through individuals authorized to discharge the duties vested in it, but the status of the parties, their title and interest, remain unchanged; besides, an appearance on behalf of a member or officer of the department could not amount to a waiver of the state's exemption from suit, even though such waiver were possible. Farish v. State Banking Board, 235 U. S. 498, 35 S. Ct. 185, 59 L. Ed. 330.

We reach the conclusion, therefore, that the state of Nebraska was a real and actual party to this action, and that the court below was without jurisdiction. As already indicated, it is our judgment that the appellants have substantial rights if the agreement set up in their answer is sustained by the proofs, but their relief, if any they have, must come from the Nebraska court in which the jurisdiction to hear and determine is lodged.

The judgment is reversed, and the case remanded to the court below, with directions to dismiss in accordance with the views herein expressed. It is so ordered.

FARIS, District Judge, dissents.